UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

FOREMOST SIGNATURE INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY as successor by merger to Maryland Casualty Company,

    Petitioners,

v.

DESIMONE CONSULTING ENGINEERS, LLC and CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC.,

    Respondents.
_____/

## PETITIONER FOR DECLARATORY JUDGMENT

Petitioners, FOREMOST SIGNATURE INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY, as successor by merger to Maryland Casualty Company (hereafter "Petitioners"), seeks a declaratory judgment that Petitioners do not owe a duty to defend or indemnify Respondent, DESIMONE CONSULTING ENGINEERS, LLC (hereafter "DeSimone"), in connection with the claims alleged in the underlying civil action brought against DeSimone, and others, and states the following:

### NATURE OF ACTION

1.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

### JURISDICTION, PARTIES AND VENUE

2.     The United States District Court for the Southern District of Florida has jurisdiction of this action pursuant to 28 U.S.C. § 1332 because there is a complete diversity of citizenship

CASE NO. _____

between Petitioners and DeSimone, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

3. Venue is proper in the United States District Court for the Southern District of Florida because this is the district where the events giving rise to the underlying action (as defined below) accrued and are currently pending.

4. Petitioner, FOREMOST SIGNATURE INSURANCE COMPANY, is a Michigan corporation with its principal place of business in Caledonia, Michigan.

5. Petitioner, ZURICH AMERICAN INSURANCE COMPANY, as successor by merger to Maryland Casualty Company, is a New York corporation with its principal place of business in Schaumburg, Illinois.

6. Respondent, DESIMONE CONSULTING ENGINEERS, LLC, is a Delaware limited liability company with its principal place of business in New York, New York. DeSimone's managing member, Stephen DeSimone, is a Citizen of the State of Florida.

7. Respondent, CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC. (the "CTS Association"), is a Florida not-for-profit corporation with its principal place of business in Fort Lauderdale, Florida. The CTS Association is presently being operated through Michael I. Goldberg, Esq., its court-appointed receiver, who is a Citizen of the State of Florida.

**THE UNDERLYING ACTION**

8. On November 16, 2021, a Consolidated Second Amended Class Action Complaint was filed in the state courts for Miami-Dade County, Florida (the "Underlying Complaint"). A copy of the Underlying Complaint is attached as Exhibit **"A".**

9. The Underlying Complaint names DeSimone as a defendant.

CASE NO. _____

10. The Underlying Complaint alleges that DeSimone was hired, retained, or otherwise acting as the structural engineer on the construction project known as "Eighty-Seven Park" located at 8701 Collins Avenue in Miami Beach, Florida. Exhibit **"A"** at ¶ 19.

11. The Underlying Complaint alleges that CTS Association's building, called Champlain Towers South ("CTS") is a twelve-story condominium building on the southernmost border of 87th Street and Collins Avenue in Surfside, Florida. Exhibit **"A"** at ¶ 26.

12. The Underlying Complaint alleges that on June 24, 2021, a portion of CTS suffered a catastrophic failure and partial collapse, resulting in death of multiple individuals. Exhibit **"A"** at ¶ 27.

13. The Underlying Complaint alleges that Eighty-Seven Park, developed and constructed between 2015 and 2020, is a sprawling 18-story luxury condominium building. Exhibit **"A"** at ¶ 49.

14. The Underlying Complaint alleges that before beginning construction of Eighty-Seven Park, the applicable building codes required a geotechnical investigation. Exhibit **"A"** at ¶ 69.

15. The Underlying Complaint alleges that, in 2015, NV5, Inc. was retained to perform a geotechnical study and render the report that section 1803 of the Florida Building Code required. Exhibit "**A**" at ¶ 72.

16. The Underlying Complaint alleges that the NV5 Report cautioned DeSimone and others involved with Eighty-Seven Park that "all excavations should comply with Occupational Safety and Health Administration [('OSHA')] design and safety requirements." Exhibit "**A**" at ¶ 79.

17. The Underlying Complaint alleges that DeSimone and others knew or should have

CASE NO. _____

known that they were responsible for ensuring Eighty-Seven Park site preparation work—including but not limited to excavation, shoring, compaction, and dewatering—would preserve, rather than undermine, CTS's structural integrity. Exhibit "**A**" at ¶ 85.

18. The Underlying Complaint alleges that DeSimone and others allegedly chose to use driven sheet piles to develop Eighty-Seven Park even though "practically vibration free" options were available. Exhibit "**A**" at ¶¶ 95-96.

19. The Underlying Complaint alleges that DeSimone and others "did not perform any vibration monitoring for sheet pile installations at the east, west, or south perimeters of the project or for the interior sheet pile installations or removals." Exhibit "**A**" at ¶ 111.

20. The Underlying Complaint alleges that even though DeSimone and others knew that the Eighty-Seven Park construction site was emitting dangerously high vibrations during vibratory sheet pile driving, and even though they knew neighbors had complained about the daily tremors and structural damage being done, DeSimone and others "never performed more than a cursory inspection of CTS following the vibratory sheet pile driving." Exhibit "**A**" at ¶ 144.

21. The Underlying Complaint alleges that DeSimone and others also allegedly "performed no vibration monitoring during site compaction procedures." Exhibit "**A**" at ¶ 155.

22. The Underlying Complaint alleges that, given the proximity of the Eighty-Seven Park project to CTS, DeSimone and others should have undertaken measures to closely monitor the underlying water table and CTS during the dewatering process. Exhibit "**A**" at ¶ 171.

23. Count VII of the Underlying Complaint alleges negligence against DeSimone in that, as the structural engineer on the Eighty-Seven Park project, DeSimone allegedly had a duty to ensure that all work, including all pile driving, dewatering, site compaction, and excavation work, was carried out safely and in a manner that did not damage or otherwise negatively impact

CASE NO. _____

the structural integrity of adjacent properties, namely CTS. Exhibit "**A**" at ¶ 422.

24. Count VIII of the Underlying Complaint alleges strict liability against DeSimone because, as the structural engineer on the Eighty-Seven Park project, DeSimone "was intimately involved in the performance and progress of the pile driving activities on the project and was extremely knowledgeable regarding the pile driving activities on site." Exhibit "**A**" at ¶ 438.

25. The Underlying Complaint further alleges in Count VIII that pile driving on the Eighty-Seven Park project, carried out under the supervision of DeSimone was inappropriate given the project's proximity to CTS, a highly populated condominium building. Exhibit "**A**" at ¶ 442.

## THE CTS ASSOCIATION'S CROSS-CLAIM

26. On December 30, 2021, the CTS Association filed its Answer, Affirmative Defenses and Cross-Claim in the Underlying Action (the "Underlying Cross-Claim"). A copy of CTS Association's Answer, Affirmative Defenses and Cross-Claim is attached as Exhibit **"B"**.

27. The Underlying Cross-Claim alleges that DeSimone and others failed to monitor vibrations produced during the preparatory site compaction procedures. Exhibit "**B**," Cross-Claim at ¶ 222.

28. The Underlying Cross-Claim also alleges that DeSimone and others did not monitor vibration levels during compaction procedures related to the installation of the Silva Cell system on the Eighty-Seven Park construction site. Exhibit "**B**," Cross-Claim at ¶ 226.

29. The Underlying Cross-Cclaim alleges that, despite the known risk of impacting the water table underlying the CTS Building and despite the proximity DeSimone and others did not monitor and/or failed to monitor adequately the impact of dewatering procedures of the Eighty-Seven Park project on the CTS building. Exhibit "**B**," Cross-Claim at ¶ 244.

30. Count XIV of the Underlying Cross-Claim alleges negligence against DeSimone

CASE NO. _____

and, as the structural engineer, DeSimone owed a duty to persons present in and occupying adjacent structures, including the Association and its members. Exhibit "**B**," Cross-Claim at ¶ 468.

31.     48. Count XIV of the Underlying Cross-Claim further alleges that DeSimone's duty included ensuring that the development of the Eighty-Seven Park project and the related construction activities did not negatively impact or harm adjacent structures or in any way compromise the stability of adjacent structures, including the CTS Building. Exhibit "**B**," Cross-Claim at ¶ 469.

32.     Count XIV of the Underlying Cross-Claim also alleges that, despite the risks about which NV5 warned DeSimone, DeSimone failed to appropriately monitor and control the risks associated with dewatering, site compaction, pile driving, and excavation procedures and failed to undertake appropriate and necessary measures to analyze and ensure that the Eighty-Seven Park construction activities were not negatively impacting the CTS Building. Exhibit "**B**," Cross-Claim at ¶ 484.

33.     Count XIV of the Underlying Cross-Claim alleges that DeSimone failed to abide by the fundamental canon of the Code of Ethics for Engineers to hold the safety, health, and welfare of the public, and, specifically, of CTS residents and occupants, of paramount importance by engaging in negligent acts and omissions. Exhibit "**B**," Cross-Claim at ¶ 486.

34.     Count XV of the Underlying Cross-Claim alleges strict liability against DeSimone because, as the structural engineer on the Eighty-Seven Park project, DeSimone "was intimately involved in the performance and progress of the pile driving activities on the project and was extremely knowledgeable regarding the pile driving activities on site." Exhibit "**B**," Cross-Claim at ¶ 493.

35.     Count XV of the Underlying Cross-Claim further alleges that pile driving on the

CASE NO. _____

Eighty-Seven Park project, carried out under the supervision of DeSimone, was inappropriate given the project's proximity to the CTS Building, a highly populated condominium building. Exhibit "**B**," Cross-Claim at ¶ 499.

## THE INSURANCE POLICIES

36. Petitioners issued policies of insurance that provided both commercial general liability and commercial umbrella policy to DeSimone, subject to the terms, provisions, conditions and exclusions stated therein.

37. Specifically, Petitioners issued policy number PAS 02239194, initially effective February 1, 2007 to "until cancelled/non-renewed" (the "Policies"). Effective April 30, 2016, the Policies were cancelled at DeSimone's request.

38. The Policies each provided substantially similar coverage.

39. The commercial general liability coverage part of the Policies provide insurance through its insuring agreement in relevant part as follows:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

[***]

    **b.** This insurance applies to "bodily injury" or "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

[***]

CASE NO. _____

    **e.**    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

[***]

40. The commercial general liability coverage part of the Policies contain the following definitions:

**SECTION V – DEFINITIONS**

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease.

[***]

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[***]

17. "Property damage" means"

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

[***]

41. The commercial general liability coverage part of the Policies contain the following exclusions:

**2.**    **Exclusions**

This insurance does not apply to:

[***]

    **o.**    **Professional**

        **(1)**    "Bodily injury" or "property damage" arising out of the rendering or failure to render any professional service, including but not limited to:

            **(a)**    Accounting, advertising, architectural, drafting, engineering, financial, insurance or legal services, advice and instruction;

CASE NO. _____

[***]

**EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS
PROFESSIONAL LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the rendering or failure to render any professional services by or for you, including:

1. The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

2. Supervisory, inspection or engineering services.

[***]

42. The commercial umbrella coverage part of the Policies provide insurance through its insuring agreement in relevant part as follows:

**SECTION 1. INSURING AGREEMENTS**

1.01 **Coverage**

A) We will pay on behalf of the insured those sums in excess of the "retained limit" which the insured becomes legally obligated to pay as damages for:

1) "Bodily injury" or "property damage" occurring during the POLICY PERIOD stated on the DECLARATIONS PAGE and caused by an "occurrence"; …

[***]

43. The commercial umbrella coverage part of the Policies contain the following definitions:

**SECTION 5. DEFINITIONS**

[***]

**5.03 Bodily Injury**

"Bodily injury" means bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease.

[***]

CASE NO. _____

    **5.12**    **Occurrence**

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

All damages that arise from continuous or repeated exposure to substantially the same general harmful conditions are considered to arise from one "occurrence".

[***]

    **5.16**    **Property Damage**

"Property damage" means:

A)    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

B)    Loss of us of tangible property that is not physically injured. All such loss will be deemed to occur at the time of the "occurrence" that caused it.

[***]

44.    The commercial umbrella coverage part of the Policies contain the following exclusions:

**ENGINEERS, ARCHITECTS OR SURVEYORS**
**PROFESSIONAL LIABILITY EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the rendering or failure to render any professional services by or for you, including:

1.    The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

2.    Supervisory, inspection or engineering services.

[***]

**TESTING OR CONSULTING**
**ERRORS AND OMISSIONS EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of:

32649651.v1

CASE NO. _____

A) An error, omission, defect or deficiency in any test performed, or an evaluation, a consultation or advice given by or on behalf of any insured; or

B) The reporting of or reliance upon any such test, evaluation, consultation or advice.

[***]

## COUNT I – DECLARATORY JUDGMENT

45. Petitioners re-allege and re-incorporate all allegations referenced above.

46. The Underlying Complaint and Underlying Cross-Claim allege that "property damage" to CTS and "bodily injury" sustained by residents and visitors therein occurred on June 24, 2021.

47. The Policies provide coverage only to "bodily injury" and "property damage" that occur during the policy period.

48. The Policies' policy periods ended on April 30, 2016 when DeSimone requested that the Foremost Policies be cancelled.

49. Accordingly, Petitioners have no duty to defend or indemnify DeSimone based on the allegations in the Underlying Complaint and Underlying Cross-Claim, under any of the Policies.

**WHEREFORE**, Petitioners request that this Honorable Court enter a declaratory judgment and declare that Petitioners have no duty to defend or indemnify DeSimone Consulting Engineers, LLC based on the insuring agreements of the commercial general liability coverage part and the commercial umbrella coverage part, for any claims alleged in the Underlying Complaint or the Underlying Cross-Claim, and for such other relief as this Court deems just and proper under the circumstances.

## COUNT II – DECLARATORY JUDGMENT

50. Petitioners re-alleges and re-incorporate all allegations referenced above.

51. The Underlying Complaint and Underlying Cross-Claim allege that DeSimone was

CASE NO. _____

negligent in performing its professional services, as that phrase is defined by the Foremost Policies.

52. The Underlying Complaint alleges that DeSimone was strictly liability in failing to carry out its "professional services" regarding the pile driving carried out at the Eighty-Seven Park project, as that phrase is defined by the Foremost Policies.

53. Accordingly, Petitioners have no duty to defend or indemnify DeSimone based on the allegations in the Underlying Complaint and Underlying Cross-Claim under any of the Foremost Policies.

**WHEREFORE**, Petitioners request that this Honorable Court enter a declaratory judgment and declare that Petitioners have no duty to defend or indemnify DeSimone Consulting Engineers, LLC based on the exclusions contained in the commercial general liability coverage part and the commercial umbrella coverage part, for any claims alleged in the Underlying Complaint or the Underlying Cross-Claim, and for such other relief as this Court deems just and proper under the circumstances.

Dated: March 4, 2022
West Palm Beach, Florida

Respectfully Submitted,

By:   */s/ Dustin C. Blumenthal*
Dustin C. Blumenthal, Esq.
Florida Bar No.: 083799
E-mail: dblumenthal@goldbergsegalla.com

**GOLDBERG SEGALLA LLP**
500 S. Australian Avenue, Suite 100
West Palm Beach, Florida 33401
Tel:   (561) 618-4485
Fax:   (561) 618-4549

*Counsel to Petitioners Foremost Signature Ins. Co. and Zurich American Ins. Co. as successor by merger to Maryland Cas. Co.*